2025 IL App (1st) 241640-U

FIFTH DIVISION
August, 22, 2025

Nos. 1-24-1640 & 1-24-1811 (cons.)

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| JAMES KANDU, | ) | Appeal from the |
| | ) | Circuit Court of |
|    Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
|   v. | ) | |
| | ) | No. 24 M2 000391 |
| JARON EASTON, JENNIFER EASTON, and | ) | |
| UNKNOWN OCCUPANTS, | ) | |
| | ) | Honorable |
|    Defendants, | ) | James L. Allegretti, |
| | ) | Judge Presiding. |
| (Jaron Easton and Jennifer Easton, Defendants-Appellants). | ) | |

_____

PRESIDING JUSTICE MIKVA delivered the judgment of the court.
Justices Oden Johnson and Navarro concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court's order of eviction in favor of plaintiff is affirmed where defendants failed to show that no due inquiry was made prior to service by posting or that service was otherwise proper or that the circuit court erred in entering a money judgment against them.

¶ 2    Plaintiff James Kandu sought to evict defendants Jaron Easton, Jennifer Easton, and unknown occupants, from a rental property he owned. A default order of eviction was entered against the Eastons and unknown occupants. On appeal, the Eastons argue that the default order

should be reversed because service was improper. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      On January 30, 2024, Mr. Kandu filed a complaint for eviction against the Eastons and unknown occupants of his property located at 8163 North Lincoln Avenue, Unit B, in Skokie, Illinois (the Skokie property). In the complaint, Mr. Kandu sought an order of possession and a money judgment in the amount of $13,267 for rent. He attached to the complaint, as exhibits, a letter dated January 2, 2024, notifying the Eastons and unknown occupants that their tenancy was being terminated, a "Proof of Service" that the "Notice of Termination" was delivered to Jaron Easton on January 3, 2024, a copy of the Eastons' lease agreement, earnings statements Mr. Easton submitted as part of the lease application, and an unredacted photograph of Mr. Easton's Ohio driver's license.

¶ 5      Eviction summonses noting a court date of March 1, 2024, were also issued on January 30, 2024, but it appears from the record that these were not served.

¶ 6      On March 1, 2024, the Eastons, as well as counsel for Mr. Kandu, appeared before the court for an initial case management conference. The court referred the matter to the Early Resolution Program (ERP) for assessment and continued the case "for further ERP case management" on March 29, 2024. The record does not indicate whether this ERP assessment took place.

¶ 7      On April 10, 2024, Mr. Kandu filed three alias summonses with the circuit court for Mr. Easton, Ms. Easton, and unknown occupants. These summonses did not list a hearing date. That same day, the court appointed a special process server. In three separate notarized affidavits filed on April 25, 2024, the special process server stated that he was unable to serve Mr. Easton, Ms. Easton, or any unknown occupants at the Skokie property and listed four attempts: from 2:45 to

4:10 p.m. on April 17, 2024; from 3 to 3:40 p.m. on April 18, 2024; at 7:20 p.m. on April 18, 2024; and at 1:50 p.m. on April 19, 2024.

¶ 8　　On May 28, 2024, counsel for Mr. Kandu filed separate affidavits in support of service by posting for each defendant, along with the separate notices that were to be posted for each of the three defendants. The affidavits were a standardized court form that listed reasons why service by posting was necessary. In section two of the affidavit form, counsel for Mr. Kandu checked the box that stated, "I cannot find the Defendant after trying my best." The affidavits listed the Eastons' last known address as the Skokie property. The notices that were posted stated that each defendant was "required to appear in person" at the Skokie courthouse on June 14, 2024. The record also contains an affidavit, in which a sheriff stated that the notices were posted on June 4, 2024, at the Skokie courthouse, police department, and public library and that copies of the notices were mailed that same day to each of the defendants at the Skokie property address.

¶ 9　　On June 6, 2024, the Eastons filed a motion to dismiss the pending eviction action. In that motion, they raised the following issues: lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, insufficiency of service of process, "failure of proof of claim," conspiracy to defraud, and identity theft.

¶ 10　　On June 14, 2024, the circuit court entered a default eviction order against the Eastons. In that order, the court checked the box indicating "Money claim dismissed and Plaintiff may seek this money in the future."

¶ 11　　On June 25, 2024, the Eastons moved to vacate the order of eviction on the basis that their previous motion had not yet been ruled on. In this motion to vacate, they stated: "a motion to dismiss was filed and accepted June 6, 2024 with motion to dismiss court date set for July 5, 2024. The motion was filed before Sheriff Affidavit of posting." On June 28, 2024, the court denied the

Eastons' motion to dismiss, vacated the default eviction order, and set a trial date for August 8, 2024.

¶ 12     On July 17, 2024, the Eastons filed a motion, noticed for July 31, 2024, which they characterized as a motion to "Vacate Denied Motion to Dismiss." The Eastons listed the following as grounds for dismissal: insufficiency of service of process, lack of diligence, lack of personal jurisdiction, and lack of subject matter jurisdiction.

¶ 13     On July 31, 2024, the circuit court entered an order, noting that on that date the Eastons did not appear in court, but a person identifying himself as " 'Wes-Ley,' " who was not an attorney, appeared in court claiming to represent the Eastons. The court denied the Eastons' motion to vacate its June 28, 2024, order, stated that the August 8, 2024, trial date would stand, and ordered the Eastons to appear at trial in person or by attorney only.

¶ 14     On August 8, 2024, the court entered a second default eviction order against the Eastons and unknown occupants, noting that defendants were not in court. This order included a money judgment in the amount of $43,917 against defendants and a directive that all defendants were ordered to move out of the property on or before August 15, 2024.

¶ 15     On August 23, 2024, the Eastons filed a motion to vacate the order of August 8, 2024. In this motion, they claimed that their due process rights were violated, service of process was insufficient, and there was a "Lack of Diligence–735 Illinois Supreme Court Rule 103." Ms. Easton and counsel for Mr. Kandu appeared before the court on this motion on September 10, 2024. The court denied the motion to vacate the eviction order, instructed the Eastons not to bring any more post-trial motions, and directed the sheriff to execute the eviction order.

¶ 16                                    II. JURISDICTION

¶ 17     The circuit court entered its second default order of eviction on August 8, 2024, and denied

4

the Eastons' post-trial motion to vacate its order of eviction on September 10, 2024. The Eastons timely filed their notice of appeal from the court's August 8, 2024, order on August 14, 2024 (appeal No. 1-24-1640). The Eastons then filed a notice of appeal from the September 10, 2024, order on September 11, 2024 (appeal No. 1-24-1811). On September 24, 2024, this court consolidated appeals Nos. 1-24-1640 and 1-24-1811. This court has jurisdiction pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017), which govern appeals from final judgments entered by the circuit court in civil cases.

¶ 18                                    III. ANALYSIS

¶ 19     This appeal concerns service of process in an eviction action. Eviction actions are governed by the Eviction Act (Act). 735 ILCS 5/9-107 (West 2022). The Eastons argue that the circuit court failed to conduct due inquiry sufficient to warrant constructive service by posting and that, since constructive service by posting was improperly permitted, they were never properly served and the default order of eviction was improper. The Eastons also argue that the filing of Mr. Easton's unredacted driver's license "constituted a breach of [Mr. Easton's] privacy rights" in violation of Illinois Supreme Court Rule 138 (eff. Jan. 1, 2018).

¶ 20     Mr. Kandu has not filed an appellee's brief. However, this does not mean that we cannot address the merits of the Eastons' arguments. As our supreme court made clear in *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976), we may consider an appeal on an appellant's brief only where, as here, the record is simple and the claimed error can be easily decided without the aid of an appellee's brief.

¶ 21     We review the question of whether a court obtained personal jurisdiction over a defendant *de novo*. *Corlis v. Edelberg*, 2018 IL App (1st) 170049, ¶ 9. As with all civil actions, a plaintiff in an eviction action must properly serve an individual defendant with process to vest the circuit court

with the personal jurisdiction necessary to enter judgment. *Corlis*, 2018 IL App (1st) 170049, ¶ 17.

Section 2-203 of the Code of Civil Procedure (Code) provides that "[e]xcept as otherwise provided, service of summons upon an individual defendant shall be made" by leaving a copy of the summons either (1) "with the defendant personally," or (2) "at the defendant's usual place of abode" with a family member or fellow household member aged 13 years or older. 735 ILCS 5/2-203(a) (West 2022). When personal or abode service cannot be made, then, in most cases, section 2-203.1 of the Code would apply. That section allows the circuit court to "order service to be made in any manner consistent with due process." 735 ILCS 5/2-203.1 (West 2022). This is the section the Eastons rely on.

¶ 22    However, in an eviction action, a plaintiff that is unable to personally serve a defendant pursuant to section 2-203 of the Code must turn to section 9-107 of the Act. *Id*. § 9-107; *Corlis*, 2018 IL App (1st) 170049, ¶ 12. Section 9-107 of the Act, rather than section 2-203.1 of the Code, applies in eviction cases because it sets out specific requirements for constructive service in eviction actions and "[w]hen a general statutory provision and a more specific one relate to the same subject, we will presume that the legislature intended the more specific statute to govern." *Abruzzo v. City of Park Ridge*, 231 Ill. 2d 324, 346 (2008); see also *Corlis*, 2018 IL App (1st) 170049, ¶ 12 (finding that section 9-107 of the Act applies in eviction actions, not section 2-203.1 of the Code).

¶ 23    This court summarized the procedure for a plaintiff to constructively serve a defendant in an eviction action pursuant to section 9-107 of the Act in *Corlis*:

> "First, a plaintiff must demonstrate that he or she is unable to obtain personal service upon a defendant by filing an affidavit stating that the defendant or unknown occupant is 'not a resident of this State, or has departed from this State, or on due inquiry cannot be found'

or is 'concealed within the State,' and 'that upon diligent inquiry the affiant has not been able to ascertain the defendant's or unknown occupant's place of residence.' *Id.* Upon satisfying the affidavit requirements of section 9-107 of the Act, a plaintiff may constructively serve a defendant in one of two ways: (1) 'posting and mailing of notices' or (2) 'publication and mailing' pursuant to section 2-206 of the Code ([citation])." *Corlis*, 2018 IL App (1st) 170049, ¶ 19.

¶ 24 Section 9-107 of the Act does not require an order of the court allowing constructive service in an eviction action; rather, the defendant may be notified by posting and mailing or by publication and mailing, based on the plaintiff's affidavit. 735 ILCS 5/9-107 (West 2022).

¶ 25 The record in this case contains affidavits of a special process server stating that he made four attempts to serve the Eastons at the rental property on three separate days, affidavits from Mr. Kandu's counsel stating that the Eastons could not be found after due inquiry and listing the Skokie property as their last known address, and affidavits from a sheriff that he had served each defendant by posting notice at the Skokie courthouse, police department and public library as well as mailed the notice to them at the Skokie property. The record in this case also contains the circuit court's default eviction order of June 14, 2024, which necessarily rests on that court's finding that defendants were properly served by the posting of notices.

¶ 26 The Eastons argue that service was procedurally deficient because no motion was filed before the court allowed service by posting. But, as discussed above, the applicable statute governing constructive service of process in eviction actions is section 9-107 of the Act, which imposes no requirement that a motion be filed. In contrast, the more general alternative service provision in section 2-203.1 of the Code *does* require a motion and a court order to serve a defendant by service other than the standard personal or abode service provided for in section

7

2-203 of the Code. Compare 735 ILCS 5/2-203.1 (West 2022) and 735 ILCS 5/9-107 (West 2022). But as we have made clear, section 2-203.1 of the Code does not apply here.

¶ 27 The Eastons claim that Mr. Kandu failed to show that he diligently attempted to serve them in person. But they do not articulate why the four documented attempts at service were not enough, why the explanation provided in the affidavit asking for service by posting was insufficient, or what additional inquiry would have revealed about their whereabouts. Instead, they point to three affidavits they submitted, none of which supplied any of this information. The Eastons mostly raised legal objections in those affidavits but also said that they did not reside at the Skokie property, that they were never served, and that they did not submit to the general jurisdiction of the court. They also alleged that their personal information appeared in public court records without redaction.

¶ 28 While the Eastons claimed in their affidavits that they did not live at the Skokie property, they did not say where they were living or how Mr. Kandu might have reasonably known how to serve them. To support their claim that the inquiry was insufficient, the Eastons compare the efforts of the process server in this case to the efforts in *People ex rel. Waller v. Harrison*, 348 Ill. App. 3d 976, 981 (2004), where the process server tried to serve the defendant at three different addresses. However, nothing in that case suggests that this was necessary. To the contrary, the court in *Harrison* noted that "whether a party has been diligent does not depend upon the sheer number of attempts at service." *Id*. at 982. The court there also highlighted that the defendant "d[id] not argue that he could have been found with a diligent inquiry." *Id*. at 981. Similarly in this case, defendants made no showing as to what Mr. Kandu could have done to serve them in person.

¶ 29 The record in this case contains no transcripts of any court hearings and we cannot determine on this record why the circuit court found that the attempts at service were sufficient to

justify service by posting. The Eastons, as the appellants, have the burden to provide a sufficiently complete record to support a claim of error. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Absent such a record, we must presume the circuit court acted in conformity with the law and with a sufficient factual basis for finding service proper and entering a default. *Id.*

¶ 30    Defendants do not raise this in their brief as a separate issue, but because it is relevant to the question of the court's jurisdiction, we note that proper service by posting did not vest the court with authority to enter a money judgment. Section 9-107 of the Act specifically provides that "the court shall not enter judgment as to any rent claim joined in the complaint *** until such time as the defendant or unknown occupant appears generally or is served with summons." 735 ILCS 5/9-107 (West 2022). The circuit court's second default order, dated August 8, 2024, included a money judgment for $43,917 despite section 9-107 of the Act, which allowed Mr. Kandu to serve defendants in this case by posting, expressly forbidding the court from entering judgment as to any rent until a general appearance is made or a summons is served. *Id.*

¶ 31    It appears that the circuit court was well aware of this limitation. On June 14, 2024, after the sheriff had posted notices, the court issued its first default eviction order in which it noted, "Money claim dismissed and Plaintiff may seek this money in the future," which comports with the requirements of section 9-107. Then, in its second default order entered on August 8, 2024, the court included the money judgment. In the time between these two orders, the Eastons filed two motions and two affidavits on four separate dates. The court held a hearing on the first motion on June 28, 2024, and its order did not indicate who, if anyone, appeared. The court held a second hearing on July 31, 2024, in which it noted that someone who was not an attorney appeared on the Eastons' behalf. Then, on August 8, 2024, the court entered another default order, this time with a money judgment. It thus appears that the circuit court's understanding was that, by the time of the

9

August 8, 2024, order, the Eastons had appeared generally and thus a money judgment could be entered.

¶ 32    A general appearance is any action taken by a defendant that acknowledges a case as being in court, unless the action is solely for the purpose of objecting to the court's jurisdiction over the defendant's person. *Minikon v. Escobedo*, 324 Ill. App. 3d 1073, 1083 (2001). It is clear that the circuit court believed that defendants' actions were sufficient to meet this low threshold. And again, we have no transcripts of hearings or bystander's report or detailed court order explaining its reasoning. On this record, we must presume that the circuit court acted in conformity with the law and with a sufficient factual basis for its findings when it treated the Eastons as having entered a general appearance and entered a money judgment against them. *Foutch*, 99 Ill. 2d 389, 391-92 (1984).

¶ 33    The Eastons also argue on appeal that the circuit court erred in allowing a violation of their privacy rights under Illinois Supreme Court Rule 138 (eff. Jan. 1, 2018) because an unredacted copy of Mr. Easton's driver's license appears in the record attached to the complaint. Rule 138 does list driver's license numbers as personal identity information that should not be included in court documents. *Id.* However, Rule 138 requires that the person impacted file a motion seeking removal of the confidential document (Ill. S. Ct. R. 138(f)(1) (eff. Jan. 1, 2018)), and there is nothing in the record that indicates this occurred. Moreover, even if a motion had been filed, Rule 138 would only require the driver's license to be redacted and, if Mr. Easton had shown the violation was willful, then he would perhaps have been entitled to court costs and attorney fees. Rule 138 (eff. Jan.1, 2018). The apparent violation of Rule 138, and any remedy Mr. Easton might have been entitled to if he had filed a proper motion, would not deprive the circuit court of personal jurisdiction. Thus, this alleged violation of Rule 138, which Mr. Easton appears to have forfeited

by not filing a motion, simply has no effect on the merits of this appeal.

¶ 34                                IV. CONCLUSION

¶ 35    The Eastons have not carried their burden on appeal of demonstrating that the circuit court

erred in allowing constructive service or in entering a money judgment against them.

¶ 36    Affirmed.